# INTERNATIONAL HARVESTER CO. *v.* WISCONSIN DEPARTMENT OF TAXATION.

NO. 620.

Argued April 27, 1944.—Decided May 29, 1944.

*Messrs. Ray M. Stroud* and *Edward R. Lewis,* with whom *Mr. John A. Kratz* was on the brief, for appellant in No. 620; and *Mr. G. Burgess Ela,* with whom *Mr. John L. Connolly* was on the brief, for appellant in No. 621.

*Mr. Harold H. Persons,* Assistant Attorney General of Wisconsin, with whom *Mr. John E. Martin,* Attorney General, and *Mr. James Ward Rector,* Deputy Attorney General, were on the brief, for appellee.

MR. CHIEF JUSTICE STONE delivered the opinion of the Court.

These cases come here on appeal under § 237 (a) of the Judicial Code, 28 U. S. C. § 344 (a), from judgments of the Supreme Court of Wisconsin, reviewing and sustaining assessments by appellee, the Wisconsin Department of Taxation, of the Wisconsin Privilege Dividend Tax imposed with respect to appellants, which are foreign corporations doing business in Wisconsin.   243 Wis. 198, 211. The appellants present again, but in a new aspect, the substance of the question decided in *Wisconsin* v. *J. C. Penney Co.,* 311 U. S. 435.   In that case we sustained the constitutionality, under the due process clause of the Fourteenth Amendment, of the Wisconsin Privilege Dividend Tax, § 3 of Ch. 505 of Wisconsin Laws of 1935 as amended by Ch. 552, Wisconsin Laws of 1935.[1]  The tax is imposed with respect to both foreign and domestic corporations doing business within the state "for the privilege of declaring and receiving dividends" out of income derived from property located and business transacted in the state.   The payor corporation is required to deduct the tax from the dividends payable to both resident and nonresident stockholders.

---

[1] The statute was re-enacted by § 3 of ch. 309 of Wis. Laws of 1937; § 1 of ch. 198 of Wis. Laws of 1939; § 3 of ch. 63 of Wis. Laws of 1941; and § 2 of ch. 367 of Wis. Laws of 1943.

Appellants are respectively a New Jersey and a Delaware corporation doing business in Wisconsin. Appellee has assessed the Privilege Dividend Tax with respect to dividends declared and paid by appellant Harvester Company to its stockholders, including non-residents, between December 2, 1935 and October 15, 1937, inclusive, and on dividends similarly declared and paid by appellant Minnesota Mining Company in the years 1936 to 1940, inclusive. In the case of each appellant the tax as assessed was measured by so much of the dividends as were derived from the portion of the corporate surplus attributed by the tax authorities to income earned by the corporation in Wisconsin. The dividends were declared at directors' meetings held outside the state, and the dividend checks were drawn on bank accounts outside the state.

In the *Penney* case we sustained the tax in the case of a Delaware corporation doing business in Wisconsin, but having its principal office in New York, holding its meetings and voting its dividends there, and drawing its dividend checks on New York bank accounts. In considering the incidence of the tax in Wisconsin, which could afford a basis for the taxation there although the declaration and payment of the dividend took place outside the state, this Court pointed out that the practical operation of the tax is to impose an additional tax on corporate earnings within Wisconsin, but to postpone the liability for payment of the tax until such earnings are paid out in dividends, and we added, 311 U. S. at p. 442: "In a word, by its general income tax Wisconsin taxes corporate income that is taken in; by the Privilege Dividend Tax of 1935 Wisconsin superimposed upon this income tax a tax on corporate income that is paid out."

Since our decision in the *Penney* case, the Wisconsin Supreme Court has said, in both the *Penney* case on remand, 238 Wis. 69, 72–73, and in the *International Harvester* case below, 243 Wis. 198, 204–206, that under the

Wisconsin constitution, the state has no power to lay an income tax on citizens of other states, who are not doing business in Wisconsin, and that the tax is not on the income of the corporation. And in *Wisconsin Gas Co.* v. *Department of Taxation,* 243 Wis. 216, 10 N. W. 2d 140; cf. *Blied* v. *Wisconsin Foundry Co.,* 243 Wis. 221, 10 N. W. 2d 142, the Court held that the burden of the tax is imposed upon the stockholders so that the corporation is not entitled to deduct the privilege tax from gross income as a business expense, in arriving at net taxable income under the state's income tax law. In the *Wisconsin Gas Company* case, *supra,* the Court said, at p. 220–1:

"We are certain of three things: (1) That the burden of the tax is specifically laid upon the stockholder; (2) that the corporation declaring the dividend must deduct the tax from the dividend and may not under any circumstances treat the tax as a necessary expense of doing business [for state income tax purposes]; (3) that the power to levy the tax so construed was authoritatively established in the *Penney* case."

From this, appellants argue that the state court has now conclusively declared that the tax is not on income of the corporation, but only on the stockholders' privilege of receiving dividends, and that it must be deducted from the dividends before their payment to the stockholders. Appellants renew the contentions urged in the *Penney* case that since the declarations of the dividends here in question were made outside the state and the non-resident stockholders received their dividends outside the state, the taxing statute as applied in these cases infringes due process by imposing the tax on stockholders and on activities and objects outside the territory of the State of Wisconsin, and consequently outside its legislative jurisdiction. Compare *Connecticut General Ins. Co.* v. *Johnson,* 303 U. S. 77. To this is added the further argument, not presented in the *Penney* case, that the tax violates the Four-

teenth Amendment because retroactively applied to and measured by Wisconsin income which was earned and carried to appellants' surplus accounts before the enactment of the statute.

For present purposes we assume that the statute, by directing deduction of the tax from declared dividends, distributes the tax burden among the stockholders differently than if the corporation had merely paid the tax from its treasury and that the tax is thus, in point of substance, laid upon and paid by the stockholders, some of whom might not bear the burden of the tax at all if, without more, it were paid out of the corporate treasury. This is obviously the case here with respect to the deductions from dividends on appellant Harvester's preferred stock, since normally the economic weight of taxes paid by the corporation would be borne by its common stockholders.

If such is the nature of the tax, a question preliminary to determining its validity is whether appellants have standing to urge here the constitutional objections of their stockholders, who are not parties to the present suits and who alone may be affected adversely by the tax. For appellants are permitted to reimburse themselves for the amounts, which they must pay to the state, by appropriate deductions from the dividends belonging to the stockholders. Appellants' failure in these cases to make the deductions was by their own choice and not by compulsion of the statute. But as the only way by which appellants can avoid the payment of the tax from their own funds is by collecting it from their stockholders' dividends and as appellants would remain liable to the stockholders, certainly to the preferred stockholders, for the amounts of the deductions if not lawfully taken, they are, in either aspect, adversely affected by obedience to the statute, if it is unconstitutional. We therefore conclude that appellants have standing to challenge the constitutionality of the statute. Cf. *Anderson National Bank* v. *Luckett,* 321 U. S. 233, 242–3.

For the reasons stated in the *Penney* case we do not doubt that a state has constitutional power to make a levy upon a corporation, measured by so much of its earnings from within the state as it distributes in dividends, and to make the taxable event the corporation's relinquishment of the earnings to its stockholders. That power is not diminished or altered by the fact that the state courts, for purposes of their own, denominate the levy a tax on the privilege of declaring and receiving dividends, or that they decline to call it an income tax. In determining whether a tax is within the state's constitutional power, we look to the incidence of the tax and its practical operation, and not its characterization by state courts. *Shaffer* v. *Carter*, 252 U. S. 37, 55 and cases cited; *Lawrence* v. *State Tax Commission*, 286 U. S. 276, 280 and cases cited.

Nor do we perceive any constitutional obstacle, either to the state's distributing the burden of the tax ratably among the stockholders, as the ultimate beneficiaries of the corporation's activities within the state, and of the state's relinquishment of control over the Wisconsin earnings, so as to render the tax *pro tanto* one on the stockholders' income, or to the state's imposing on the corporation the duty of acting as its agent for the collection of the tax, by requiring deduction of the tax from earnings distributed as dividends.

The power to tax the corporation's earnings includes the power to postpone the tax until the distribution of those earnings, and to measure it by the amounts distributed. Compare *Curry* v. *McCanless*, 307 U. S. 357, 370. In taxing such distributions, Wisconsin may impose the burden of the tax either upon the corporation or upon the stockholders who derive the ultimate benefit from the corporation's Wisconsin activities. Personal presence within the state of the stockholder-taxpayers is not essential to the constitutional levy of a tax taken out of so much of the corporation's Wisconsin earnings as is distributed to them. A state may tax such part of the income

of a non-resident as is fairly attributable either to property located in the state or to events or transactions which, occurring there, are subject to state regulation and which are within the protection of the state and entitled to the numerous other benefits which it confers. Compare *Shaffer* v. *Carter, supra,* and *Travis* v. *Yale & Towne Mfg. Co.,* 252 U. S. 60, with *Lawrence* v. *State Tax Commission, supra,* and *New York ex rel. Cohn* v. *Graves,* 300 U. S. 308. And the privilege of receiving dividends derived from corporate activities within the state can have no greater immunity than the privilege of receiving any other income from sources located there.

We think that Wisconsin may constitutionally tax the Wisconsin earnings distributed as dividends to the stockholders. It has afforded protection and benefits to appellants' corporate activities and transactions within the state. These activities have given rise to the dividend income of appellants' stockholders and this income fairly measures the benefits they have derived from these Wisconsin activities. There is no contention here that the formula of apportionment does not fairly reflect the proper proportion of appellants' earnings attributable to their Wisconsin activities and transactions. Wisconsin may impose a measure of control upon the corporation there with respect to its withdrawal of its earnings from the state, and also may, for the protection of the interests of the state and of its citizens, regulate to some extent the declaration and distribution of dividends by a foreign corporation, certainly with respect to its Wisconsin earnings. See, e. g., Judge Cardozo in *German-American Coffee Co.* v. *Diehl,* 216 N. Y. 57, 109 N. E. 875; New York Stock Corporation Law, § 114. The earnings in Wisconsin, their withdrawal from Wisconsin and their distribution in the form of dividends have resulted in the receipt of income by the stockholder-taxpayers and it is Wisconsin's relation to all which permits it to levy the tax. It may

condition the privilege of earning and disposing of the Wisconsin earnings upon the payment of a tax measured by and collected from the earnings to be distributed as dividends. *Wisconsin* v. *J. C. Penney Co., supra.*

The facts that Wisconsin cannot prevent the withdrawal of the earnings from the state or the declaration of the dividends, if they be the facts, have no bearing on its right to measure, in terms of taxes, both the benefits which it has conferred on the stockholders in their relations with the state, and the activities or transactions which are within the reach of its regulatory power. *Equitable Life Society* v. *Pennsylvania,* 238 U. S. 143, 147; cf. Mr. Justice Holmes dissenting in *Compañia de Tabacos* v. *Collector,* 275 U. S. 87, 99, 100.

That the distribution of Wisconsin earnings was effected by the exercise outside Wisconsin of the power to declare dividends does not deprive it of its power to take toll from the income earned there upon its distribution to the stockholders. See *Bullen* v. *Wisconsin,* 240 U. S. 625; *Curry* v. *McCanless, supra,* 366–370 and cases cited; *Graves* v. *Elliott,* 307 U. S. 383; *State Tax Commission* v. *Aldrich,* 316 U. S. 174, 180. And the fact that the stockholder-taxpayers never enter Wisconsin and are not represented in the Wisconsin legislature [2] cannot deprive it of its jurisdiction to tax. It has never been thought that residence within a state or county is a *sine qua non* of the power to tax. Cf. *Cook* v. *Tait,* 265 U. S. 47. So long as the earnings actually arise there, and their withdrawal from the state and ultimate distribution, in whole or in part, to stockholders are

---

[2] The Wisconsin Privilege Dividend Tax does not discriminate against non-residents or foreign corporations, or place an undue burden on them without a corresponding burden on residents or domestic corporations. Hence this is not a case where "legislative action is not likely to be subjected to those political restraints which are normally exerted on legislation where it affects adversely some interests within the state." See *South Carolina Highway Dept.* v. *Barnwell Bros.,* 303 U. S. 177, 184–5, n. 2 and cases cited.

subject to some state control, the conditions of state power to tax are satisfied, see *Shaffer* v. *Carter, supra,* 55; *State Tax Commission* v. *Aldrich, supra;* compare *McCulloch* v. *Maryland,* 4 Wheat. 316, 429, even though some practically effective device be necessary in order to enable the state to collect its tax—here by imposing on the corporation the duty to withhold the tax on so much of the earnings withdrawn from the state as may be distributed in dividends. Imposition of this requirement on the corporation transgresses no constitutional limitations. *Nelson* v. *Sears, Roebuck & Co.,* 312 U. S. 359, 364; *Nelson* v. *Montgomery Ward & Co.,* 312 U. S. 373.

Appellants press with vigor, as controlling decision here, the denial of the state's power to tax in *Connecticut General Ins. Co.* v. *Johnson, supra.* In that case California sought to levy a tax on gross receipts derived from contracts made and to be performed in Connecticut by a Connecticut corporation doing other business in California. But as we said of the *Johnson* case in the *Penney* case, *supra,* 446: "In the precise circumstances presented by the record it was found that the tax neither in its measure nor in its incidence was related to California transactions. Here, on the contrary, the incidence of the tax as well as its measure is tied to the earnings which the State of Wisconsin has made possible, . . ." and both the earnings and their disposition are subject to state control and hence its power to tax.

It should be emphasized once again that the Fourteenth Amendment does not in terms or in effect prohibit unwise taxes, merely because they are unwise, or unfair or burdensome taxes, merely because they are unfair or burdensome. The wisdom or fairness of the tax before us are not matters subject to our control or revision. We are only concerned with the power of the state to lay the tax. The power to tax "is an incident of sovereignty, and is coextensive with that to which it is an incident. All sub-

jects over which the sovereign power of a state extends, are objects of taxation; . . ." *McCulloch* v. *Maryland, supra,* 429; *Curry* v. *McCanless, supra,* 366.

We conclude that appellants' stockholders can have no constitutional objection to the withholding by Wisconsin of a tax measured by their dividends distributed from Wisconsin earnings.

Appellants do not deny that the dividends are derived from earnings from within the State of Wisconsin, but it is urged that some of them at least were paid from corporate surplus earned and set aside in years before the taxing statute was enacted. But since the taxable event, the distribution of dividends paid from earnings, and the deduction of the tax from them occurred subsequent to the enactment of the taxing statute, no question of its retroactive application is involved.

The contention of appellant, the Harvester Company, that the formula for assessing the tax is not one authorized by the statute is not open to consideration here. The State Supreme Court has construed and applied the statute and by its construction we are bound. *Meyer* v. *Wells, Fargo & Co.,* 223 U. S. 298 and *Davis* v. *Wallace,* 257 U. S. 478, on which appellant relies, were cases coming here from the lower federal courts, in which this Court was required to place its own construction on a state statute which had not been definitively construed by the state courts.

*Affirmed.*

MR. JUSTICE ROBERTS took no part in the consideration or decision of these cases.

MR. JUSTICE JACKSON, dissenting:

The facts of one of these cases will make clear the grounds upon which I dissent.

The International Harvester Company is incorporated under the laws of New Jersey. Its head business office

is in Chicago, Illinois. It has qualified and has been admitted to do business in Wisconsin and in every state in the Union except Nevada. It has sales branches and manufacturing plants in Wisconsin, and in many other states. Proceeds of sales and receipts from operations in Wisconsin and in every other state are sent to the corporation treasury in Chicago and commingled in general funds without segregation or earmarking as to state of origin.

More than 32,000 stockholders are owners of this enterprise. They are domiciled in every state of the Union, less than 2 per cent of them in Wisconsin. Under the corporation's charter and the applicable law of New Jersey the stockholders may be paid dividends only from its surplus or net profits. Every corporate act connected with payment of dividends takes place in Chicago. There the directors meet to declare them, there the checks are drawn and mailed. They are paid out of the corporation's general funds on deposit in Chicago or New York.

In 1935 Wisconsin enacted a "Privilege Dividend Tax." It provides, with exceptions not material:

"Section 3. Privilege Dividend Tax. (1) For the privilege of declaring and receiving dividends, out of income derived from property located and business transacted in this state, there is hereby imposed a tax equal to 3 per cent of the amount of such dividends declared and paid by all corporations (foreign and local). . . . Such tax shall be deducted and withheld from such dividends payable to residents and nonresidents by the payor corporation.

.        .        .        .        .

"(3) Every such corporation hereby made liable for such tax, shall deduct the amount of such tax from the dividends so declared.

"(4) In the case of corporations doing business within and without the state of Wisconsin, such tax shall apply only to dividends declared and paid out of income derived

from business transacted and property located within the state of Wisconsin. . . ." Wis. Stat. (1941) § 71.60.

Under this last provision the State by formula not now important apportions among the states the surplus from which dividends may be paid and thus determines a proportion of the dividend attributable to earnings in Wisconsin. As applied and sustained in this case, the short of the matter is this: Wisconsin says it may tax 32,000 stockholders, 98 per cent of whom reside in other states. It taxes them when and because they receive a dividend from a corporation not in its internal affairs subject to its laws, by acts not one of which is performed within its borders.

After the Supreme Court of Wisconsin held this tax invalid it was reinstated by this Court. *Wisconsin* v. *J. C. Penney Co.*, 311 U. S. 435. This was done on the theory that the tax was not what Wisconsin called it but was in substance an income tax on the corporation, deferred until the income was distributed and measured by the amount of the distribution. As so interpreted, it was the federal undistributed profits tax in reverse; it was a distributed profits tax. But the Wisconsin court has respectfully but firmly insisted that it knows whom Wisconsin is taxing and why. It says this is not an income tax, that it is no tax on the corporation, but is a tax on the stockholder when and because he receives a dividend.

I think the parties are entitled to have the constitutionality of this far-reaching tax decided on the assumption that it is just what the Wisconsin Legislature and Supreme Court say it is. If we do, the question is whether a state may tax nonresident stockholders for receiving from a foreign corporation a dividend from its surplus or undivided profits merely because some time in the past a portion of the surplus was earned in the state.

We must put out of consideration entirely reasoning by which we sustain state taxation of income of the corpora-

tion. These dividends are not and cannot be regarded as income of the corporation within any legal or accounting definition. These surplus funds constituted income once—at the moment of receipt—and may be counted as income for any period which includes time of receipt. But once received, they became capital funds in the sense that earned surplus becomes capital. When they were distributed they were not income of the corporation. They were its surplus capital funds. Not even the power of this Court can make income of outgo. To speak of "a tax on corporate income that is paid out" is as self-contradictory as to speak of round squares.

These dividends of course are income to the stockholder, and any state with jurisdiction to tax him may tax them as such. But I am unable to agree that having "afforded protection and benefits" to a corporation gives jurisdiction to tax the incomes of all its stockholders. Nor do I think that because the state has once permitted the corporation to do business and make earnings in the state its taxing power follows those earnings into the hands of third persons to whom they may be paid. A dividend when declared becomes a debt of the corporation, enforceable as any other debt. If there is power in Wisconsin, because funds were earned there, to tax the receipt of a dividend, there is no reason why it should not also have power to tax the recipients of corporate funds as wages, salaries, or as payment of any other obligation.

Moreover, the Court itself apparently feels obliged to abandon the income-tax-on-the-corporation theory in order to avoid the objection of retroactivity. In considering this aspect of the tax it shifts to a "taxable event" theory which places the event after the enactment of the statute.

I also find it difficult to accept the statement that there is no "constitutional obstacle either to the state's distributing the burden of the tax ratably among the stockhold-

ers . . . or to the state's imposing on the corporation the duty of acting as its agent for the collection of the tax. . . ." The relations between different classes of stockholders is fixed by the corporate charter. If this is a tax on the corporation, it is clear that its burden falls upon the equity stockholders and upon them alone. I do not think the State of Wisconsin would have the power to provide that the preferred stockholders of a New Jersey corporation, despite provisions of its charter, should assume a part of the equity burden.

As supporting this tax, the opinion of the Court says that Wisconsin may impose upon the corporation "a measure of control . . . with respect to its withdrawal" of these earnings, and that their "ultimate distribution . . . to stockholders" is "subject to some state control." I do not understand to what reference is made. These earnings lawfully had been added to surplus of a New Jersey corporation, they were represented by funds lawfully transferred to Chicago or New York. From them the corporation made the distribution. What control Wisconsin had over these funds in these circumstances I do not see.

The act in question does not purport to be one for the protection of local creditors against the corporation's illegal payment of dividends as was the act dealt with by Judge Cardozo in *German-American Coffee Co.* v. *Diehl,* 216 N. Y. 57, 109 N. E. 875. This act alters the purely internal relations of different classes of stockholders without in the least affecting their relation to creditors.

It is impossible to reconcile the taxable-event theory with the benefit theory for supporting this tax. The taxable event clearly is the payment of the dividend. The right to make such payment is not derived from Wisconsin law. The ability to do so does not depend on Wisconsin earnings. The existence of earnings for the period, or of an accumulated surplus, from Wisconsin earnings alone

would not authorize such a dividend. That would depend on net accumulations from all sources and surplus from Wisconsin might be neutralized by losses from operations elsewhere. In such a case it is clear this statute would not even purport to tax, although Wisconsin had extended exactly the same protection to the operations within the state as otherwise. Moreover, if earnings were had in Wisconsin and there were net earnings overall but the corporation should decide to accumulate them, the statute would not purport to lay the Wisconsin tax. These facts make clear that Wisconsin is doing what the Supreme Court of Wisconsin said it was doing. It lays a tax upon the stockholder's dividend. It does not tax the income of the corporation.

I do not see that the way to tax the dividends of nonresident stockholders can be bridged by "some practically effective device" necessary "in order to enable the state to collect its tax—here by imposing on the corporation the duty to withhold the tax." Do we mean that the state may empower or obligate a foreign corporation to collect for it taxes it is without power to collect itself? The physical power to get the money does not seem to me a test of the right to tax. Might does not make right even in taxation. To hold that what the use of official authority may get the state may keep, and that if it cannot get hold of a nonresident stockholder it may hold the company as hostage for him, is strange constitutional doctrine to me.

Whatever rights Wisconsin has to reach beyond its borders and tax nonresidents every other state has also. One who puts his savings to work in an enterprise of national scope may be subjected to any number of state taxes on his dividends up to forty-eight. Any number up to forty-seven of them may be levied by states in which he never lived, never went, did no individual business,

and has no vote.   Representation is the ordinary guaranty of fairness in taxation.

I do not think any fact in this case shows jurisdiction in Wisconsin to lay a tax on a privilege she does not grant and could not deny, which is exercised wholly outside of her borders and by those who are not her citizens or her corporate creatures.   I see no foundation for the tax Wisconsin has laid and no better foundation for the substitute tax this Court has laid.   I would reverse the judgments below.