*633 OPINION OF THE COURT
Jeffrey M. Atlas, J.
Petitioner, successor in interest to the Bendix Corporation (Bendix), has moved to annul a final determination made by respondent which found Bendix liable for a general corporation tax deficiency in the amount of $96,540 for the 1981 fiscal year. Respondent found that Bendix improperly excluded from its 1981 general corporation tax return dividend income received from its stock ownership in Asarco Inc. (Asarco) and capital gains income from the sale of its Asarco stock. Petitioner argues that respondent’s attempt to tax Bendix’s investment income derived from its ownership of Asarco stock violates the United States Constitution.*
Bendix was incorporated in the State of Delaware and headquartered in the State of Michigan. Asarco was incorporated in the State of New Jersey and had its headquarters in New York City. While both Bendix and Asarco did business in New York City, at no time relevant to respondent’s final determination did the two corporations engage in any business activity between themselves in New York. Bendix’s purchase of approximately 20.6% of Asarco’s stock took place outside of New York.
During Bendix’s 1981 fiscal year it received $2,795,137 of dividend income from its ownership of Asarco stock and $211,513,354 in capital gains from the sale of that stock. All funds were received by Bendix outside of New York. When Bendix filed its general corporation tax return for 1981, it did not declare this income believing that New York City was constitutionally prohibited from taxing the income of a non-domiciliary which resulted from its investment made outside the city in a totally unrelated enterprise, even though that enterprise did business in New York City. The New York City Department of Finance disagreed with Bendix as to the constitutionality of taxing such income and issued a notice of determination that a deficiency existed in Bendix’s general corporation tax return for 1981. Petitioner then filed a petition for hearing with the Department of Finance to review the notice of determination. A hearing was held and a decision rendered upholding the Department of Finance’s notice of determination.
*634 Before me, petitioner seeks to set aside the determination arguing that since all of Bendix’s activities concerning its investment in Asarco took place at its corporate headquarters in Michigan, all income derived from this investment was earned outside of New York City and may not be taxed by New York City unless Bendix and Asarco were engaged in a unitary business.
The Supreme Court has held that where an entity doing business within a given jurisdiction receives investment income from another entity having no connection with that jurisdiction, the jurisdiction may tax that income only if the two entities are engaged in a "unitary business” (see, Woolworth Co. v Taxation & Revenue Dept., 458 US 354 [1982]; Asarco Inc. v Idaho State Tax Commn., 458 US 307 [1982]; Exxon Corp. v Wisconsin Dept. of Revenue, 447 US 207 [1980]; Mobil Oil Corp. v Commissioner of Taxes, 445 US 425 [1980]; Butler Bros. v McColgan, 315 US 501 [1942]; Ford Motor Co. v Beauchamp, 308 US 331 [1939]; Bass, Etc. v Tax Commn., 266 US 271 [1924]). Two entities are said to be engaged in a "unitary business” when the business of the entity from whom the investment income is derived is so much a part of the business of the recipient of the income, that they may be considered as one entity engaged in the generation of income for the recipient. The theory behind the constitutionality of levying a tax on investment income earned outside the taxing jurisdiction is that the business activities of the payor entity are sufficiently related to the activities of the recipient in the taxing jurisdiction so as to create a nexus between the investment income and the taxing jurisdiction (see, Mobil Oil Corp. v Commissioner of Taxes, supra). Petitioner contends that no "unitary business” relationship existed between Bendix and Asarco and therefore New York City’s taxation of Bendix’s receipt of income from its investment in Asarco is unconstitutional.
Respondent contends that the existence of a "unitary business” relationship is not the only method by which a local government may tax income from a foreign investment. Respondent argues that even if no "unitary business” relationship exists, a local government may constitutionally tax foreign investment income if that government has extended some protection to the activities which generate that income. Respondent further argues that the protection it has afforded to Asarco’s activities within the City of New York allows it to tax that percentage of the income received by Bendix from its *635 Asarco investment which may be attributed to Asarco’s New York activity.
Petitioner on the other hand suggests that the heart of the "unitary business” cases is that, at the very least, the protected activities which generate the income sought to be taxed be those of the recipient taxpayer in the taxing jurisdiction and not those of the payor.
I agree with respondent’s view. Determination of this issue should begin with the Supreme Court’s decision in Connecticut Gen. Co. v Johnson (303 US 77 [1938]). Connecticut General Life Insurance Co. (Connecticut General) was a Connecticut corporation admitted to do business in California. Part of Connecticut General’s business involved entering into contracts with other insurance companies for the purpose of insuring these companies against loss on life insurance policies issued by them. Connecticut General entered into these reinsurance contracts with other insurance companies, also admitted to do business in California, insuring them against loss on life insurance policies entered into in California and issued to California residents. While the life insurance policies were contracted for in California, the reinsurance contracts were entered into in Connecticut. All premiums on the reinsurance contracts were paid in Connecticut and all potential losses were payable there. California sought to tax the premiums paid to Connecticut General in Connecticut. The Supreme Court held that such a tax could not constitutionally be levied since it violated the Due Process Clause of the Fourteenth Amendment of the US Constitution. The Supreme Court found that the reinsurance contracts involved no transactions or relationship between Connecticut General and those California residents insured on the life insurance contracts and that California had no relationship to Connecticut General or the reinsurance contracts. None of Connecticut General’s activities was dependent on any privilege or authority granted by California nor had California done anything which afforded Connecticut General any protection in the receipt of the premiums. The Supreme Court, having found no relationship between California and the activities of Connecticut General, stated that "[t]he tax cannot be sustained either as laid on property, business done, or transactions carried on within the state, or as a tax on a privilege granted by the state” (303 US, supra, at 82).
In Wisconsin v Penney Co. (311 US 435 [1940]) the Supreme Court held as constitutional a tax by Wisconsin on dividends *636 paid by J. C. Penney, a Delaware corporation, doing business in Wisconsin but headquartered in New York. The Supreme Court held that while J. C. Penney held all its meetings in New York, voted its dividends there and drew its dividend checks on New York bank accounts, Wisconsin could tax that percentage of the dividends attributable to J. C. Penney’s earnings within Wisconsin without running afoul of the Constitution. The court stated that the test to be applied is "whether the taxing power exerted by the state bears fiscal relation to protection, opportunities and benefits given by the state.” (Supra, at 444.) With regard to the Wisconsin tax the court found that the "substantial privilege of carrying on business in Wisconsin * * * clearly supports the tax”. (Supra, at 444-445.) The court found that where a nexus exists between a tax and events occurring within a State for which the tax is an exaction, the nexus is not destroyed merely because events outside the State trigger the tax. Finally, in distinguishing Connecticut Gen. Co. v Johnson (supra), the court said that while the California tax was in no way related to California transactions, the incidence of the Wisconsin tax "as well as its measure is tied to the earnings which the State of Wisconsin had made possible” (supra, at 446).
Four years after the decision in Wisconsin v Penney Co. (supra) was handed down, the Supreme Court was again asked to consider the constitutionality of Wisconsin’s tax on dividends. In International Harvester Co. v Wisconsin Dept. of Taxation (322 US 435 [1944]) the contention urged upon the court, by appellants (dividend payors) on behalf of their shareholders, was that while the tax on dividends was paid by the dividend payor, the effect was to reduce the amount of the dividend each stockholder received and therefore the burden of the tax fell on the stockholders. It was argued that when nonresident stockholders received dividends declared and paid outside of Wisconsin "the taxing statute as applied in those cases infringes due process by imposing the tax on stockholders and on activities and objects outside the territory of the State of Wisconsin, and consequently outside its legislative jurisdiction.” (Supra, at 439.) The court found that there existed no constitutional obstacle to Wisconsin’s placing the burden of a tax on profits earned within its borders on nonresident stockholders since it was the stockholders who were the ultimate beneficiaries of the corporation’s Wisconsin activities. The court stated that "[personal presence within the state of the stockholder-taxpayers is not essential to the *637 constitutional levy of a tax taken out of so much of the corporation’s Wisconsin earnings as is distributed to them. A state may tax such part of the income of a non-resident as is fairly attributable either to property located in the state or to events or transactions which, occurring there, are subject to state regulation and which are within the protection of the state and entitled to the numerous other benefits which it confers * * *. And the privilege of receiving dividends derived from corporate activities within the state can have no greater immunity than the privilege of receiving any other income from sources located there.” (Supra, at 441-442.)
In the instant case, the City of New York has sought to tax Bendix only on the amount of the dividends and capital gains which it received and which are attributable to Asarco’s business activities within the city. It is undisputed that the City of New York has given protection and benefits to Asarco’s activities within its borders. That these activities have given rise to the dividend income and capital gains received by Bendix is also undisputed. Therefore, the City of New York is only asking for a return on the protection and benefits it has given to Asarco which have resulted in income and increased corporate value. The fact that Bendix, the ultimate beneficiary of such protection and benefits, did not engage in any activity in the City of New York which resulted in its receipt of dividends and capital gains is of no moment. The earnings arose within the City of New York and pursuant to International Harvester Co. v Wisconsin Dept. of Taxation (supra), the city may constitutionally tax the recipient of those earnings.
The petitioner’s application made pursuant to CPLR article 78 to annul the final determination made by respondent in the matter of the petition of the Bendix Corporation is denied.

 Petitioner does not challenge the constitutionality of the apportionment formula used by respondent to determine the percentage of the investment income attributable to activities within the City of New York.