OPINION OF THE COURT
Titone, J.
 In this appeal we are called upon to determine whether New York City may constitutionally tax any portion of the dividend and capital gain income that a nondomiciliary corporation receives by reason of its investment in another corporation conducting business within the City in the absence of a unitary business relationship between the two *76 corporations.[1] For the reasons that follow, we conclude that the City may do so without offending either the Due Process Clause (US Const 14th Amend) or the Commerce Clause (US Const, art I, § 8) of the Federal Constitution.
I. THE CITY’S TAXATION SCHEME
New York City imposes a general corporation tax, based upon net income, on domestic and nondomiciliary corporations "[f]or the privilege of doing business, or of employing capital, or of owning or leasing property in the city in a corporate or organized capacity, or of maintaining an office in the city” (Administrative Code of City of New York § 11-603 [1]). Consistent with this purpose, the City has adopted rules for allocating corporate income, depending upon the connection between the income and the City. Although income derived from a taxpayer’s business operations (business income) and income derived from a taxpayer’s investments (investment income) are taxed at the same rate, each is allocated to the City by a different method.
The portion of a corporate taxpayer’s business income allocable to the City is determined by multiplying the taxpayer’s total business income by its "business allocation percentage” (BAP). The BAP represents the arithmetic average of the ratios of the taxpayer’s receipts, payroll and property values within the City to those of the corporation as a whole (see, Administrative Code § 11-604 [3] [a]).[2] For example, if 20% of a taxpayer’s total receipts, payroll and property are connected with the City, its BAP will be 20%, and it will be taxed by the City on 20% of its total business income.
A corporate taxpayer’s investment income, in contrast, is allocated to the City by multiplying the taxpayer’s total investment income by its "investment allocation percentage” (IAP). Unlike the taxpayer’s BAP — which reflects the taxpayer’s own activities in the City, the taxpayer’s IAP reflects the degree of New York City presence of the issuers of the *77 securities in which the taxpayer has invested (i.e., the corporations which have generated the taxpayer’s investment income).[3]
The taxpayer’s IAP is determined by first multiplying the amount of each of the taxpayer’s investments by the percentage of the issuer’s entire capital allocated to the City on the issuer’s own New York City return, if any, for the preceding year (see, Administrative Code § 11-604 [3] [b]). The amounts thus determined are then added together and divided by the taxpayer’s total investments, yielding the taxpayer’s IAP (see, id.).[4] The taxpayer’s total investment income is then multiplied by its IAP to determine the amount of that income which is subject to taxation by the City.
II. FACTS AND PROCEDURAL HISTORY
In the late 1970’s, The Bendix Corporation (Bendix) — a Delaware manufacturing corporation headquartered in South-field, Michigan — acquired approximately 20.6% of the outstanding common stock of ASARCO Inc. (ASARCO) — a New Jersey mining and refining corporation with its commercial domicile in New York City. Bendix planned, effectuated and managed this investment from its Michigan offices. At all relevant times, Bendix’s activities in New York City were limited to those conducted by its International Group — one of its divisions — whose sole function was the development of business abroad.
During its 1981 fiscal year, Bendix received $2,795,137 in dividends at its Michigan headquarters from its ASARCO investment. Prior to the end of that same fiscal year, Bendix, again acting through its Michigan offices, sold its ASARCO stock, realizing a capital gain of $211,513,354. Bendix, however, did not include any of this dividend and capital gain *78 income in its tax base on its New York City general corporate tax return for the 1981 fiscal year.
Following an audit, the New York City Department of Finance restored the excluded income to Bendix’s tax base as apportionable investment income, and issued a notice of determination of a deficiency in the amount of $244,281, which was subsequently reduced to $96,540.[5] Bendix thereafter petitioned the department for a redetermination. Relying on Woolworth Co. v Taxation & Revenue Dept. (458 US 354) and ASARCO Inc. v Idaho State Tax Commn. (458 US 307), Bendix contended that New York City could not constitutionally tax any of the dividend and capital gain income that it — as a nondomiciliary of the City — derived from its investment in another corporation in the absence of a unitary business relationship between the two corporations.[6] The Department, however, disagreed, and upheld the deficiency, reasoning that the absence of a unitary business relationship was not determinative when the investment income sought to be taxed was allocated to the taxing jurisdiction on the basis of the presence in that jurisdiction of the corporation which generated that income, rather than the presence of the taxpayer itself.
Petitioner Allied-Signal Inc. — Bendix’s successor-in-interest —thereafter commenced this CPLR article 78 proceeding seeking to annul the determination of the Department of Finance. Supreme Court, New York County, denied the petition (146 Misc 2d 632), and on appeal, the Appellate Division, First Department, affirmed (167 AD2d 327). Both courts, relying in part on Harvester Co. v Department of Taxation (322 US 435), concluded that the absence of a unitary business relationship between Bendix and ASARCO was not dispositive, since the dividend and capital gain income that the City was seeking to tax had its source within the City. Petitioner thereafter ap *79 pealed as of right to this Court (CPLR 5601 [b] [1]). We now affirm.
III. ANALYSIS
When a State or municipality seeks to impose an income-based tax upon a multijurisdictional corporation the strictures of the Due Process and Commerce Clauses compel it to confine its taxing powers to income fairly attributable to activities carried on within its borders (see, Container Corp. v Franchise Tax Bd., 463 US 159, 164; Woolworth Co. v Taxation & Revenue Dept., supra, at 363; ASARCO Inc. v Idaho State Tax Commn., supra, at 315; Mobil Oil Corp. v Commissioner of Taxes, 445 US 425, 436-437). A taxpayer who contends that a taxing jurisdiction has transgressed this fundamental limitation bears "the ' "distinct burden of showing by 'clear and cogent evidence’ that [the challenged tax] resulted] in extraterritorial values being taxed” ’ ” (Container Corp. v Franchise Tax Bd., supra, at 164, quoting Exxon Corp. v Wisconsin Dept. of Revenue, 447 US 207, 221, in turn quoting Butler Bros, v McColgan, 315 US 501, 507, in turn quoting Norfolk & W. Ry. Co. v North Carolina, 297 US 682, 688). Petitioner contends that it has met this heavy burden here. Specifically, it maintains that New York City, by attempting to tax the dividend and capital gain income that Bendix — a nondomiciliary of the City — derived from its investment in ASARCO, has exerted its taxing powers over income not properly taxable by the City. It bases this contention on two separate — albeit interrelated — arguments. First, it asserts that the City may not tax the income that a nondomiciliary corporation derives from its investment in another corporation — even when the latter corporation itself does business within the City — in the absence of a unitary business relationship between the two corporations. Second, it contends that even if such a relationship is not essential, the tax imposed here by the City nevertheless cannot withstand constitutional scrutiny, since it did not fairly reflect the taxpayer’s own presence and activities in the taxing jurisdiction.[7] We address each of these arguments in turn.
*80 A
The Due Process and Commerce Clauses of the Federal Constitution prevent a State or municipality from taxing the income that a nondomiciliary corporation earns unless there is some "minimal connection” or "nexus” between that income and the taxing jurisdiction (see, Container Corp. v Franchise Tax Bd., supra, at 165-166; Exxon Corp. v Wisconsin Dept. of Revenue, supra, at 219-220). Petitioner contends that the lack of a unitary business relationship between Bendix and ASARCO necessarily negates any possibility of a sufficient nexus existing in this case.[8] In support of this argument, it points to three Supreme Court decisions, Woolworth Co. (supra), ASARCO Inc. (supra) and Mobil Oil Corp. (supra), where the Court observed that the "linchpin of apportionability” in the field of State income taxation is the "unitary-business principle” (Woolworth Co. v Taxation & Revenue Dept., 458 US, at 362, supra; ASARCO Inc. v Idaho State Tax Commn., 458 US, at 317, supra; Mobil Oil Corp. v Commissioner of Taxes, 445 US, at 439, supra). We, however, are not persuaded that these cases can be read as broadly as petitioner contends.
Woolworth, ASARCO and Mobil, each involved a State’s attempt to tax the dividend or capital gain income that a nondomiciliary corporation doing business within its borders derived from its investment in another corporation which itself had no connection with the taxing jurisdiction.[9] The *81 State in each case relied solely on the corporate taxpayer’s own presence within its borders as providing the State with a sufficient nexus with the "foreign-source” income that it sought to tax. The Supreme Court in each instance concluded that such a connection — standing alone — would be insufficient to support the exertion of the State’s taxing powers unless there was a unitary business relationship — an integral tie— between the corporate taxpayer and the corporation which generated the investment income in question.[10] Nowhere did the Court indicate that it intended that the existence of a unitary business relationship would be the exclusive means for satisfying the nexus requirement when a State or municipality sought to tax the investment income that a nondomiciliary corporation earned. Thus, contrary to the views expressed in Judge Hancock’s dissent, neither Woolworth, ASARCO nor Mobil, can be said to have decided the question presented here —namely, whether the business activities conducted in New York City by ASARCO — the corporation which generated Bendix’s investment income — may provide the requisite nexus for the City’s imposition of a tax on a portion of that income.[11] *82 We agree with the City that precedent requires that this question be answered in the affirmative.
In determining whether a sufficient nexus exists between a taxing jurisdiction and the income it seeks to tax, the Supreme Court has emphasized that the inquiry should focus upon whether "the taxing power exerted * * * bears fiscal relation to protection, opportunities and benefits given by the state. The simple but controlling question is whether the state has given anything for which it can ask return” (Wisconsin v Penney Co., 311 US 435, 444; see, Norfolk & W. Ry. Co. v Tax Commn., 390 US 317, 325, n 5). Here, it is undisputed that New York City has afforded privileges and opportunities to ASARCO. That these privileges and opportunities have contributed to ASARCO’s capital appreciation and thus also inured to the benefit of all its shareholders, including Bendix, is also beyond question.[12] Thus, we agree with the City that it has given Bendix something "for which it can ask return,” and that consequently a sufficient nexus existed to support the City’s tax.[13]
Indeed, it would be difficult to reconcile a contrary conclusion with the Supreme Court’s decision in Harvester Co. v Department of Taxation (322 US 435, supra). There, the Court upheld the Wisconsin Privilege Dividend Tax[14] which — in its
*83 practical operation[15] — worked very similarly to the tax at issue here. Both were imposed on nondomiciliary shareholders based on the presence in the taxing jurisdiction of the corporation which generated the investment income sought to be taxed.[16] Significantly, in upholding the Wisconsin tax against constitutional challenge, the Supreme Court expressly rejected the notion that the taxing power exerted by a State had to be premised on the taxpayer’s own activities within the State:
"[A state] may impose the burden of the tax * * * upon the stockholders who derive the ultimate benefit from the corporation’s [state] activities. Personal presence within the state of the stockholder-taxpayers is not essential to the constitutional levy of a tax taken out of so much of the corporation’s [state] earnings as is distributed to them. A state may tax such part of the income of a non-resident as is fairly attributable either to *84 property located in the state or to events or transactions which, occurring there, are * * * within the protection of the state and entitled to the numerous other benefits which it confers. * * * And the privilege of receiving dividends derived from corporate activities within the state can have no greater immunity than the privilege of receiving any other income from sources located there” (id., at 441-442 [emphasis supplied]; see also, Shaffer v Carter, 252 US 37).
B
Having concluded that a sufficient nexus existed to support the imposition of the City’s tax, we now turn to petitioner’s alternative — albeit closely related — argument that the tax imposed here was nevertheless unconstitutional since it did not fairly reflect Bendix’s (i.e., the taxpayer’s) own presence and activities in the taxing jurisdiction. Specifically, petitioner contends that, inasmuch as Bendix planned, effectuated and managed its AS ARCO investment solely from its Michigan headquarters, none of the income it derived from that investment can be said to be related — fairly or otherwise — to its (i.e., Bendix’s) activities in the City. Accordingly, petitioner maintains that the tax imposed here must be deemed to have been "out of all appropriate proportion to the business transacted * * * in [the City]” (citing Rees’ Sons v North Carolina, 283 US 123, 135), and to have "led to a grossly distorted result” (citing Norfolk & W. Ry. Co. v Tax Commn., 390 US 317, 326).
The obvious fallacy in petitioner’s argument is that the premise upon which it is based — that the tax imposed here had to be fairly related to Bendix’s (i.e., the taxpayer’s) own activities within the City — simply has no basis in either logic or precedent. If a tax is properly premised on the presence in the taxing jurisdiction of an entity other than the taxpayer (as we have concluded that the tax at issue here was), common sense would seem to dictate that the tax must be fairly related to that entity’s activities within the taxing jurisdiction —not the taxpayer’s. Indeed, the Supreme Court has indicated that such a focus is constitutionally required (Trinova Corp. v Michigan Dept. of Treasury, 498 US —, —, 111 S Ct 818, 832 [the tax imposed " 'must actually reflect a reasonable sense of how [the] income is generated’ ”], quoting Container Corp. v Franchise Tax Bd., 463 US, at 169, supra; see also, Goldberg v *85 Sweet, 488 US 252, 262 [the tax imposed must “reasonably reflect[ ] the in-state component of the activity being taxed”]; Woolworth Co. v Taxation & Revenue Dept., 458 US, at 363, supra [" 'the income attributed to [a] State for tax purposes must be rationally related to "values connected with the taxing State” ’ ”]). Inasmuch as petitioner has not demonstrated that the City’s tax on the dividend and capital gain income that Bendix derived from its ASARCO investment bore anything but an inherently rational relationship to the manner in which that income was generated, we decline to hold it unconstitutional on that basis (see, Harvester Co. v Department of Taxation, 322 US, at 442, supra [noting that the in-State activities of the corporation which generated the investment income sought to be taxed "fairly measure(d) the benefits that (the taxpayer-shareholders) derived from these (in-State) activities”]).
IV. CONCLUSION
In sum, we conclude that petitioner has failed to meet its " 'distinct burden of showing by "clear and cogent evidence” that [the City’s tax] resulted] in extraterritorial values being taxed’ ” (Container Corp. v Franchise Tax Bd., 463 US, at 175, supra). Accordingly, the order of the Appellate Division should be affirmed, with costs.

. See, Woolworth Co. v Taxation & Revenue Dept. (458 US 354); ASARCO Inc. v Idaho State Tax Commn. (458 US 307); Mobil Oil Corp. v Commissioner of Taxes (445 US 425); see also, Container Corp. v Franchise Tax Bd. (463 US 159); Exxon Corp. v Wisconsin Dept. of Revenue (447 US 207).

. If New York City is the corporate taxpayer’s only regular place of business, then its BAP is 100% (Administrative Code of City of New York § 11-604 [3] [a] [4]).

. New York State has adopted similar rules for allocating corporate investment income (see, Tax Law § 210 [3] [b]).

. The determination of a taxpayer’s IAP may be illustrated as follows: Assume that a taxpayer has invested in corporations "A”, "B” and "C”. Also assume that the taxpayer’s investment in "A” is valued at $200,000, its investment in "B” at $300,000, and its investment in "C” at $600,000; and that "A’s” New York City issuer’s allocation percentage is 40%, "B’s” is 15%, and "C’s” is 10%. The sum of each of the taxpayer’s investments multiplied by the respective issuer’s allocation percentage is $185,000 ([$200,000 X 40%] + [$300,000 X 15%] + [$600,000 X 10%]). That amount ($185,000) is then divided by the sum of the taxpayer’s total investments ($1,100,000), yielding the taxpayer’s IAP (16.8%).

. In computing the deficiency, the department had used an investment allocation percentage (IAP) of 1.4747% to determine the portion of Bendix’s investment income allocable to New York City. The department subsequently conceded that the correct IAP was .6639%, which, when certain prepayments were taken into account, reduced the deficiency as indicated above.

. The parties have stipulated that Bendix and ASARCO were at no relevant time engaged in a unitary business relationship (see, Container Corp. v Franchise Tax Bd., 463 US 159; Woolworth Co. v Taxation & Revenue Dept., 458 US 354; ASARCO Inc. v Idaho State Tax Commn., 458 US 307; Exxon Corp. v Wisconsin Dept. of Revenue, 447 US 207; Mobil Oil Corp. v Commissioner of Taxes, 445 US 425).

. Petitioner’s contention that the weighted averaging formula used by New York City for allocating investment income (see, supra, at 76-77) is unconstitutional since it may potentially result in the taxation of investment income having no connection with the City was not raised below, and thus is not preserved for our review.

. See, Hellerstein, State Taxation of Interstate Business: Perspectives on Two Centuries of Constitutional Adjudication, 41 Tax Law 37, 75 (1987) ("The Court’s unitary business decisions are in substance a subspecies of nexus cases — the question being whether the state has a sufficient connection with the taxpayer’s income [or some identifiable portion of it] to include it in the apportionable tax base” [emphasis supplied]).

. In Woolworth, ASARCO and Mobil, the Supreme Court narrowly framed the issue before it in terms of whether a State could tax a portion of the dividend or capital gain income that a nondomiciliary corporation received by reason of its investment in another corporation that did no business within the taxing jurisdiction (see, Woolworth Co. v Taxation & Revenue Dept., supra, at 356 ["The question is whether the Due Process Clause permits New Mexico to tax a portion of dividends that appellant F. W. Woolworth Co. received from foreign subsidiaries that do no business in New Mexico” (emphasis supplied)]; ASARCO Inc. v Idaho State Tax Commn., supra, at 308-309 ["The question is whether the State of Idaho constitutionally may include within the taxable income of a nondomiciliary parent corporation doing some business in Idaho a portion of intangible income — such as dividend and interest payments, as well as capital gains from the sale of stock — that the parent receives from subsidiary corporations having no other connection with the State” (emphasis supplied)]; Mobil Oil *81 Corp. v Commissioner of Taxes, supra, at 442 [The question is whether Mobil’s "foreign-source dividends * * * [are] exempt, as a matter of due process, from apportionment for state income taxation by the State of Vermont” (emphasis supplied)]).

. Judge Bellacosa, in dissent, concludes that Bendix’s own activities within New York City supplied a sufficient constitutional nexus for the City’s taxation of the dividend and capital gain income that Bendix derived from its ASARCO investment. Inasmuch as the parties have stipulated that a unitary business relationship did not exist between Bendix and ASARCO, it is difficult to reconcile such a conclusion with Woolworth Co. (supra), ASARCO Inc. (supra) and Mobil Oil Corp. (supra). Each of those decisions, as noted above, clearly held that the mere presence in the taxing jurisdiction of a nondomiciliary corporate taxpayer is insufficient to support that jurisdiction’s taxation of the dividend and capital gain income that the corporate taxpayer derives from its investments in other corporations.

. Judge Hancock posits that two recent decisions handed down by the New Jersey and Virginia Supreme Courts (Bendix Corp. v Director, Div. of Taxation, 125 NJ 20, 592 A2d 536, cert granted sub nom. Allied-Signal, Inc. v Director, Div. of Taxation, — US —, 112 S Ct 632 [Nov. 27, 1991]; Corning Glass Works v Virginia Dept. of Taxation, 241 Va 353, 402 SE2d 35, cert denied — US —, 112 S Ct 277) support petitioner’s contention that ASARCO’s presence and activities in New York City do not provide the requisite nexus for the City’s taxation of a portion of the dividend and capital gain income that Bendix derived from its investment in that corporation. Inasmuch as neither the New Jersey nor the Virginia case involved a taxing scheme that — like the City’s — allocates investment income to the taxing jurisdiction on the basis of the presence in that jurisdiction of the corpora *82 tion which generated the income in question, neither of those decisions can be said to have addressed the issue raised here.

. See, Harvester Co. v Department of Taxation (322 US 435, 442 ["(A state) may constitutionally tax the (state) earnings distributed as dividends to the stockholders. It has afforded protection and benefits to (the corporation’s) activities and transactions within the state. These activities have given rise to the dividend income of (the corporation’s) stockholders and this income fairly measures the benefits they (i.e., the stockholders) have derived from these (state) activities” (emphasis supplied)]).

. Judge Bellacosa, in concluding that the challenged tax is unconstitutional, ascribes some significance to the fact that the City has labeled the tax "a business privilege tax” and not an income tax (see, Bellacosa, J., dissenting opn, at 91). Such a focus, however, is misplaced. As the Supreme Court has explained: "There is no economic consequence that follows necessarily from the use of the particular words, 'privilege of doing business,’ and a focus on that formalism merely obscures the question whether the tax produces a forbidden effect” (Complete Auto Tr. v Brady, 430 US 274, 288).

. The Supreme Court, in an earlier decision — Wisconsin v Penney Co. (311 US 435) — had upheld the same tax on the basis that its "practical operation” was merely "to impose an additional tax on corporate earnings within Wisconsin but to postpone the liability for this tax until such earnings [were] paid out in dividends” (id., at 442). Wisconsin’s highest court, however, subsequently construed the statute in question as imposing *83 a tax on the shareholder, and not the corporation. Accordingly, the Supreme Court, when again confronted with the issue of the tax’s constitutionality in the Harvester case, "assume[d] that the [tax] statute, by directing deduction of the tax from declared dividends, distributed] the tax burden among the stockholders differently than if the corporation had merely paid the tax from its treasury and that the tax [was] thus, in point of substance, laid upon and paid by the stockholders” (322 US, at 440).

. The Supreme Court has made it clear that it is the practical operation of a tax — not its label — which governs its constitutionality (see, Complete Auto Tr. v Brady, 430 US 274, 280 ["the tax should be judged by its economic effects rather than by its formal phrasing”]).

. Despite Judge Hancock’s assertions to the contrary, the fact that the corporation was responsible for withholding and turning over the tax to the State did not alter the fact that the tax was ''in point of substance, laid upon and paid by the stockholders” (see, Harvester Co. v Department of Taxation, 322 US 435, 440; see also, Wisconsin Gas Co. v United States, 322 US 526, 528-530 ["Doubtless all taxes on corporate earnings are, to a greater or lesser extent, translated into economic burdens upon the shareholder. [But] not all such taxes can be said, for that reason, to be 'imposed’ upon the shareholder. * * * However, here the burden is placed upon him, not derivatively as through an income tax upon the corporation, but directly and exclusively. * * * That [the State] has made the corporation its tax collector by requiring it to withhold payment of a portion of the dividends and to turn that portion over to the State does not make the tax one 'imposed’ upon the corporation * * *. The fact is that the tax is extracted from fixed dividends owed to the stockholder, not merely from his common interest in corporate earnings. * * * [T]he impact of the tax is focused narrowly and falls independently upon each recipient of the dividend without affecting the tax burden of the corporation or other shareholders. The operation thus disclosed for the tax amply sustains the emphatic declaration of the [State] Supreme Court that it is imposed upon the shareholder, not upon the corporation” (emphasis supplied)]).