■ In the Matter of British Land (Maryland), Inc., Petitioner, v Tax Appeals Tribunal of State of New York et al., Respondents. [609 NYS2d 439] —Mikoll, J. P. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Tax Law § 2016) to review a determination of respondent Tax Appeals Tribunal which sustained franchise tax assessments imposed under Tax Law articles 9-A and 27.

Petitioner was incorporated in Delaware in May 1973 and maintains its principal place of business in London, England. Petitioner is an indirect subsidiary of British Land Company Plc., an international real estate investment company headquartered in London. One of the latter's primary business purposes was to purchase strategically located, prime proper-

ties likely to increase in value. Through its subsidiaries, British Land Company owns hundreds of such properties worldwide. In May 1973, petitioner purchased a 27-story office building known as the Central Savings Bank Building in Baltimore, Maryland (hereinafter the Baltimore property). On or about October 1, 1982, petitioner acquired an office building located at 90 Broad Street in New York City (hereinafter the New York property). In March 1984 petitioner sold the Baltimore property, resulting in a capital gain of $13,023,844.

On its New York franchise tax return for the fiscal year ending March 31, 1984, petitioner subtracted the $13,023,844 capital gain from the sale of the Baltimore property from its taxable income, resulting in a net income loss of $162,338. Petitioner also reported a business allocation percentage of 39.95903%, resulting in an allocated taxable net income loss of $64,869 and a tax due of $6,655. The Department of Taxation and Finance (hereinafter the Department) conducted an audit and disallowed petitioner's deduction of the $13,023,844 capital gain, recomputed the tax and issued notices of deficiency assessing petitioner with a tax liability of $971,073, plus interest and penalties.

Petitioner's protest of the deficiency assessments was disallowed and petitioner appealed the determination of the Administrative Law Judge (hereinafter ALJ) to respondent Tax Appeals Tribunal (hereinafter the Tribunal), which found that petitioner was conducting a unitary business and that the tax assessed was not out of proportion to the amount of business done in New York. The Tribunal sustained the ALJ's determination and this proceeding followed.

The primary issues presented for review are (1) whether there is substantial evidence to support the finding that petitioner was conducting a unitary business for franchise tax liability purposes, (2) if there is substantial evidence, whether the tax assessed is out of all proportion to petitioner's activities within New York State, and (3) whether petitioner's claim that the penalty imposed is arbitrary and capricious has been preserved for judicial review.

Petitioner's argument that the record before the Tribunal lacks substantial evidence that petitioner was conducting a unitary business is without merit. A State may, without offending the Due Process or Commerce Clauses of the United States Constitution, tax an out-of-State corporation on an apportionable share of the business carried on, in part, in the taxing State, if the corporation operates a unitary business

*(Allied-Signal, Inc. v Director, Div. of Taxation,* 504 US 504, —, 112 S Ct 2251, 2258). "The prerequisite to a constitutionally acceptable finding of unitary business is a flow of *value,* not a flow of goods" *(Container Corp. v Franchise Tax Bd.,* 463 US 159, 178 [emphasis in original]). The question is whether the contributions to income result from "functional integration, centralization of management, and economies of scale" *(Allied-Signal, Inc. v Director, Div. of Taxation, supra,* at 2264; *see, Container Corp. v Franchise Tax Bd., supra,* at 179). Among the factors courts have found may be relevant to such inquiry are: "appellant's assistance to its subsidiaries in obtaining used and new equipment and in filling personnel needs that could not be met locally, the substantial role played by appellant in loaning funds to the subsidiaries and guaranteeing loans provided by others, the 'considerable interplay between appellant and its foreign subsidiaries in the area of corporate expansion,' * * * the 'substantial' technical assistance provided by appellant to the subsidiaries * * * and the supervisory role played by appellant's officers in providing general guidance to the subsidiaries" *(Container Corp. v Franchise Tax Bd., supra,* at 179 [citations omitted]). The United States Supreme Court has further observed that: "When a corporation invests in a subsidiary that engages in the same line of work as itself, it becomes much more likely that one function of the investment is to make better use—either through economies of scale or through operational integration or sharing of expertise—of the parent's existing business-related resources" *(supra,* at 178). These principles are followed in New York *(see, e.g., Matter of Allied-Signal, Inc. v Commissioner of Fin.,* 79 NY2d 73, 79-85). Whether a unitary business exists depends on the facts of each case, that is, the existence of substantial evidence to support the finding *(see, Matter of Gun Hill Plumbing Supply Co. v Chu,* 145 AD2d 769, 771; *Matter of General Mills Rest. Group v Chu,* 125 AD2d 762, 765).

The instant record meets that test. The evidence established that the primary purpose of British Land Company is to acquire, through its subsidiaries, strategically located, first-class properties worldwide which are likely to increase in value. The Baltimore and New York properties were acquired pursuant to this corporate objective. Petitioner engaged in the same line of business at both locations and the vice-president of petitioner testified that he and other corporate officers participated in a central investment strategy and were responsible for making all of petitioner's investment decisions. The

record reveals that although petitioner entered into management agreements with separate management firms to maintain and operate the properties, it retained substantial control over the properties including the right to approve leases and expenditures and numerous other items. These facts lead to the conclusion that the overall management of the properties was centralized.

There is also evidence of a flow of monetary resources between petitioner and British Land Company and/or its other subsidiaries involving each of the properties in dispute. The record demonstrates that petitioner borrowed money from affiliates of British Land Company to keep the Baltimore property going when it was operating at a deficit. Further, upon acquiring the New York property, petitioner signed an agreement guaranteeing the obligations of British Land Company under the loan agreement. This demonstrates that capital resources were used to further the real estate investment purposes of the participants, petitioner, British Land Company and its other affiliates. Moreover, there is evidence that petitioner considered its business to be unitary when it reduced its tax on the gain from the sale of the Baltimore property by including New York assets and revenues in its allocation formula on its Maryland corporation tax return for the fiscal year ending March 31, 1984.

Petitioner's contention that the tax imposed is still invalid because it is out of all proportion to petitioner's business activities in New York in that the tax is equivalent to 2,200% of its New York taxable income derived from a separate accounting, a percentage that clearly exceeds percentages upheld by the courts, is not persuasive. Petitioner points to no case law, and we have found none, automatically invalidating taxes which exceed a certain percentage of the income generated by a corporation within a State. The United States Supreme Court in its rulings, however, has indicated that the burden is on the party challenging the apportionment formula to demonstrate by " 'clear and cogent evidence' that it results in extraterritorial values being taxed" *(Butler Bros. v McColgan,* 315 US 501, 507, quoting *Norfolk & W. Ry. Co. v North Carolina,* 297 US 682, 688). Thus, in order to succeed petitioner must establish that the apportionment formula used taxes income "out of all appropriate proportion to the business transacted * * * in that state" *(Hans Rees' Sons v North Carolina,* 283 US 123, 135) or has "led to a grossly distorted result" *(Norfolk & W. Ry. Co. v Tax Commn.,* 390 US 317, 326).

Petitioner here has offered only the result of a separate geographic accounting, consisting simply of the income generated by petitioner in New York, in meeting its burden of proof on this issue, and it is insufficient *(see, Container Corp. v Franchise Tax Bd., supra,* at 164-165). A separate accounting by itself will not impeach the credibility of the tax imposed under an apportionment formula *(see, ASARCO, Inc. v Idaho State Tax Commn.,* 458 US 307, 317; *Exxon Corp. v Wisconsin Dept. of Revenue,* 447 US 207, 223). Petitioner has failed to meet its burden of showing the tax imposed is disproportionate to its activities in New York.

Finally, petitioner's contention that the Tribunal should have waived the penalties for underpayment of the tax pursuant to Tax Law § 1085 (k), because there was reasonable cause for the exclusion of the disputed gain from petitioner's New York return, is rejected. Petitioner did not specifically raise the issue in the proceedings before the ALJ or the Tribunal and has therefore waived it *(see, Matter of ADP Automotive Claims Servs. v Tax Appeals Tribunal,* 188 AD2d 245, 249, *lv denied* 82 NY2d 655; *Matter of Friesch-Groningsche Hypotheekbank Realty Credit Corp. v Tax Appeals Tribunal,* 185 AD2d 466, *lv denied* 80 NY2d 761).

Mercure, Crew III and Yesawich Jr., JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.