Bellacosa, J.
(dissenting). I vote to reverse and grant the petition to annul the determination of the New York City Department of Finance.
While I agree that there is a constitutional nexus to tax the dividend and capital gain income Bendix received from its investment in ASARCO, I would reach that conclusion based on a direct precedential and analytical path instead of the majority’s circuitous, more precedentially troubling derivative benefits theory that the presence and activities of the payer of the dividend/capital gain (ASARCO) supplies the necessary nexus to support a tax on Bendix. The constitutionality of this tax should be determined on the taxpayer’s (Bendix’s) presence and activities in New York City. That alone is a sufficient taxing nexus in this case.
The majority’s misdirected analysis on that threshold proposition then contributes to the wrong result in this case on the related question whether New York City’s business privilege tax is unconstitutionally disproportionate to Bendix’s activi *86 ties in the City. By mistakenly focusing on the municipal benefits provided to the payer ASARCO, and derivatively reattributing them to Bendix, the majority rewards the taxing jurisdiction with the ability to double tax. The benefits directly provided to the taxpayer Bendix should control whether the business privilege tax is disproportionate.
In addition to the majority’s description of the New York City tax scheme, I note that a corporate taxpayer’s business allocation percentage (BAP) is based on its real or tangible personal property located in the City, receipts earned in the City, and wages and salaries paid to employees in the City— not those merely "connected with” (majority opn, at 76) the City. Also, Bendix purchased its ASARCO stock in the open market, solely for investment purposes, and ASARCO is not a subsidiary or affiliate of Bendix.
A patchwork of State and municipal taxation schemes has emerged in the vacuum caused by congressional inaction to uniformly regulate taxation of multijurisdictional corporate income. Constitutional challenges to those schemes have been asserted in the State and Federal courts proportionate to the increasingly sophisticated and wide-reaching taxing schemes implemented by the States and their constituent municipalities. As the United States Supreme Court has recognized:
"The resulting judicial application of constitutional principles to specific state statutes leaves much room for controversy and confusion and little in the way of precise guides to the States in the exercise of their indispensable power of taxation * * * [T]he decisions have been 'not always clear . . . consistent or reconcilable. A few have been specifically overruled, while others no longer fully represent the present state of the law.’ From the quagmire there emerge, however, some firm peaks of decision which remain unquestioned.” (Northwestern Cement Co. v Minnesota, 358 US 450, 457-458, citing Miller Bros. Co. v Maryland, 347 US 340, 344.)
Counterbalancing the threshold presumption of constitutionality of statutes, especially taxing statutes which impose a heavy burden of proof on objecting taxpayers, is another elementary but potent principle that a State cannot tax value earned outside its borders (ASARCO Inc. v Idaho State Tax Commn., 458 US 307, 315; Connecticut Gen. Co. v Johnson, 303 *87 US 77, 80-81). However, identification of the specific geographic source of all the income of multijurisdictional corporations can be difficult and occasionally impossible to ascertain. Recognizing this difficulty, the United States Supreme Court long ago established that the entire net income of a business operating in interstate commerce including income from intangibles may be fairly apportioned among the States for tax purposes, by formulas utilizing in-State aspects of interstate affairs, to avoid unfair multiple taxation (Northwestern Cement Co. v Minnesota, 358 US 450, 458-462, supra; Curry v McCanless, 307 US 357, 368).
Constitutional challenges to State tax apportionment schemes often implicate mixed Due Process and Commerce Clause concerns. Due process requires a " 'minimal connection’ between the interstate activities and the taxing State, and a rational relationship between the income attributed to the State and the intrastate values of the enterprise” (Mobil Oil Corp. v Commissioner of Taxes, 445 US 425, 436-437; Trinova Corp. v Michigan Dept. of Treasury, 498 US —, —, 111 S Ct 818, 828). Complete Auto Tr. v Brady (430 US 274) allows a tax over a Commerce Clause challenge if the tax (1) is applied to an activity with a substantial nexus with the taxing State; (2) is fairly apportioned; (3) does not discriminate against interstate commerce; and (4) is fairly related to the services provided by the State (id., at 279; Goldberg v Sweet, 488 US 252, 266-267).
Allied/Bendix raises two challenges to the taxation of its ASARCO dividend and capital gain income. First, it argues that there is no constitutional nexus between Bendix’s activities in the City and its ASARCO investment income. Second, Allied/Bendix contends that even if a constitutional nexus exists, the tax on Bendix’s ASARCO investment income is not "fairly related,” i.e., is disproportionate, to Bendix’s activities in the City. The majority thus oversimplifies the issues in this case by stating that the question is "whether New York City may constitutionally tax any portion of the dividend and capital gain income” Bendix received from its ASARCO investment (majority opn, at 75). If a nexus exists, all of that income is subject to taxation. However, the actual measure of the tax that may be imposed must be proportionate to the taxpayer’s activities in the taxing jurisdiction. That second, necessarily interrelated requirement governs the result in this case under my analysis and it cannot be conclusorily swept aside, as the majority has done.
*88 The Due Process and Commerce Clause requirements erect a "minimal” constitutional nexus hurdle (majority opn, at 80). If the corporate taxpayer "avails itself of the 'substantial privilege of carrying on business’ within the State”, a nexus for taxation of income generated in interstate commerce— including income from intangibles used in its business in the State — is supplied (Mobil Oil Corp. v Commissioner of Taxes, 445 US 425, 437, 445, supra, quoting Wisconsin v Penney Co., 311 US 435, 444-445; see, Curry v McCanless, 307 US 357, 366-368, supra).
The sensible analytical focus of that inquiry should be on the protection, opportunities and benefits afforded to the taxpayer — here, Bendix — not those afforded to other corporations who contribute to the taxpayer’s income by payment of dividends. Those corporations pay their own business privilege tax in return for the "protection, opportunities and benefits” provided to them by the City. I agree with Judge Hancock that Harvester Co. v Department of Taxation (322 US 435) does not hold to the contrary (see, Hancock, J., dissenting opn, at 98-103). I therefore disagree with the majority that ASARCO’s City presence, standing alone, satisfies the nexus requirement to support taxation of Bendix’s ASARCO investment income. Bendix’s New York City presence and business activities themselves provide a sufficient nexus.
Allied/Bendix does not dispute that Bendix’s presence and international business activities in the City supply a constitutional nexus supporting imposition of the City general corporation income tax. Indeed, Bendix filed a City tax return for its 1981 fiscal year, and does not challenge the apportionment of $131,432 of its business income to the City. Allied/Bendix objects, however, to the tax on its ASARCO dividend and capital gains income because (1) its investment in ASARCO was planned, effectuated and overseen entirely through and at Bendix’s Michigan headquarters, and Michigan is therefore the "source” of its investment income; and (2) because there is no unitary business relationship between Bendix and ASARCO. Both of these arguments fail.
Bendix’s Michigan business presence and investment activities cannot be segregated from its New York City presence and activities to insulate Bendix from the City’s tax on its ASARCO investment income. The Supreme Court has consistently rejected challenges to taxation of income based on the argument that the " 'source of [particular] income may be *89 ascertained by separate geographical accounting * * * [, where] the intrastate and extrastate activities formed part of a single unitary business’ ” (Trinova Corp. v Michigan Dept. of Treasury, 498 US —, —, 111 S Ct 818, 831, supra, quoting Mobil Oil Corp. v Commissioner of Taxes, 445 US 425, 438, supra; Exxon Corp. v Wisconsin Dept. of Revenue, 447 US 207, 219). Allied/Bendix has not alleged that its City activities and its Michigan investment activities were discrete activities of a nonunitary business.
Alternatively, Allied/Bendix urges this Court to follow other State courts and summarily resolve this case in its favor based on the threshold, stipulated absence of a unitary business relationship between Bendix and ASARCO (see, Corning Glass Works v Virginia Dept. of Taxation, 241 Va 353, 402 SE2d 35, cert denied — US —, 112 S Ct 277; Bendix Corp. v Director, Div. of Taxation, 125 NJ 20, 592 A2d 536, cert granted sub nom. Allied-Signal, Inc. v Director, Div. of Taxation, — US —, 112 S Ct 632). Judge Hancock, in separate dissent, agrees with this approach.
However, Allied/Bendix’s argument in this respect does not go far enough or give enough credit to the complexity, uniqueness and sophistication of this legitimate taxing scheme. Here, I agree with the majority that the cases Allied/Bendix relies on for its asserted threshold infirmity — ASARCO Inc. v Idaho State Tax Commn. (458 US 307, 315, supra), Woolworth Co. v Taxation & Revenue Dept. (458 US 354), and Mobil Oil Corp. v Commissioner of Taxes (445 US 425, 437, supra) — do not hold that a unitary business relationship between the taxpayer and the investment income payer is a constitutional sine qua non to municipal taxation of investment income. The taxing schemes implicated in those cases establish two classes of corporate income from intangibles. "Business (intangible) income”, defined as income from activities which are an "integral or necessary part” of the taxpayer’s business operations, is apportioned under a three-factor formula. "Nonbusiness (intangible) income” is allocated entirely to the State where the taxpayer is domiciled. The City’s tax scheme is distinctly and significantly different. Intangible income from all sources is apportioned to the City pursuant to the formula. Moreover, the issue before the Supreme Court in those cases was whether certain dividend and capital gain income the taxpayer received from its out-of-State subsidiaries and affiliates constituted taxable "business income” or nontaxable "nonbusiness income”. ASARCO is not a subsidiary or affiliate of *90 Bendix. The Supreme Court’s narrow conclusion in those cases was that the lack of a unitary business relationship between the taxpayer and its subsidiary/affiliates required that the income be classified as nontaxable nonbusiness (intangible) income. Contrary to the majority’s assertion (majority opn, at 81), the Supreme Court did not conclude that a corporate taxpayer’s presence in the taxing jurisdiction would be an insufficient taxing nexus, without more, to support taxation of investment income. Indeed, Curry v McCanless (307 US 357, supra) suggests to the contrary.
Inasmuch as I would conclude that Bendix’s presence and business activities in the City provide a sufficient, direct nexus to tax its ASARCO investment income, the proportionality prerequisites must next be thoroughly considered. The Commerce and Due Process Clauses impose the "additional limitation that the measure of the tax must be reasonably related to the extent of the contact” (Commonwealth Edison Co. v Montana, 453 US 609, 626 [emphasis added], citing Western Live Stock v Bureau, 303 US 250, 254). This requirement, while closely related to the nexus requirement, is directed at the measure of the tax rather than whether the tax may constitutionally be imposed at all.
To survive Commerce Clause and due process scrutiny, a municipal corporate tax must be assessed "in 'proper proportion’ to * * * activities within the [taxing jurisdiction] and, therefore, to [the taxpayer’s] 'consequent enjoyment of the opportunities and protections which the State has afforded’ in connection with those activities” (Commonwealth Edison Co. v Montana, 453 US 609, 626, supra), in order to ensure that the taxpayer shoulders no more than its "just share of [the] state tax burden” (id., at 626, quoting Western Live Stock v Bureau, 303 US 250, 254, supra; see, Exxon Corp. v Wisconsin Dept. of Revenue, 447 US 207, 228, supra; General Motors v Washington, 377 US 436, 441; Wisconsin v Penney Co., 311 US 435, 446, supra).
The City Department of Finance, the lower courts and the majority conclude that the City tax on Bendix’s ASARCO investment income is constitutional because the tax flows from a stream of investment income generated by the business activities of a payer within the City, ASARCO, which receives benefits from the City. Thus, the disproportionate business privilege tax imposed on Bendix is justified by reference to the benefits and privileges the City conferred upon ASARCO, as *91 the investment income payer — benefits for which ASARCO already paid its own full business privilege tax. However, the United States Supreme Court cases support the view that the focus under the proportionality prerequisite must be on the taxpayer’s (Bendix’s) activities in the taxing jurisdiction, and on the benefits it (Bendix) receives in connection with those activities (Goldberg v Sweet, 488 US 252, 266-267, supra; Commonwealth Edison Co. v Montana, 453 US 609, 626-627, supra).
It is important to note in this respect that ASARCO bears its own full business privilege tax burden for the benefits the City affords it. Derivatively attributing those same benefits again to Bendix would impose a clearly offensive and duplicative tax — a governmental version of double-dipping. This is not the lawful and long-accepted "double” income tax regime allowed on a corporation’s earnings and on its shareholders’ dividends. This is a business privilege tax, which is different in kind and governed by distinguishable taxing principles. The majority appears to treat the tax imposed here as an ordinary income tax instead of a business privilege tax.
Finally, the lower courts’ and the majority’s novel "derivative benefit theory” would require taxpayers to shoulder an unconstitutional excess of their " 'just share of [the] state tax burden’ ” (Commonwealth Edison Co. v Montana, 453 US 609, 626, supra). That is precisely what happened in this case. $131,431 of Bendix’s business income was apportioned to the City to reflect Bendix’s presence there and, consequently, to "pay for” the full protection, opportunities and benefits the City afforded Bendix in connection with its City activities. While that, of course, is not the issue in this case, it bears on what happened next. The City then added $1,422,974 in apportioned income from Bendix’s ASARCO investment source and increased Bendix’s business privilege tax liability by 1,155% — obviously with no additional protection, opportunities or benefits afforded to Bendix’s already fully taxed City activity. That increase in taxable income was "out of all appropriate proportion to the business” Bendix conducted in the City, exceeding even the 250% increase struck down by the Supreme Court in Rees’ Sons v North Carolina (283 US 123, 135).
In sum, the New York City General Corporation Tax on the investment income Bendix received from ASARCO overreached the proportionality limitations of the Commerce and Due Process Clauses.