Hancock, Jr., J.
(dissenting). The question is whether New York City may constitutionally impose a tax on Bendix’s dividend and capital gain income from its investment in ASARCO, a company engaged in activities totally unrelated to those of Bendix. I conclude that the imposition of such a tax violates the "minimal nexus” and "fairly related” requirements of the Federal Due Process and Commerce Clauses. This conclusion, I think, is compelled by five recent decisions of the Supreme Court dealing with taxation of investment income under the unitary business principle (see, Container Corp. v Franchise Tax Bd., 463 US 159; Woolworth Co. v Taxation & Revenue Dept., 458 US 354; ASARCO Inc. v Idaho State Tax Commn., 458 US 307; Exxon Corp. v Wisconsin Dept. of Revenue, 447 US 207; Mobil Oil Corp. v Commissioner of Taxes, 445 US 425). It is compelled, as well, by an analysis of general constitutional principles as seen in earlier Supreme Court decisions pertaining to State taxation of nondomiciliary corporations on income derived from interstate activities.
Inasmuch as New York City may not constitutionally tax Bendix for such unrelated investment income, it makes no difference that the source of that income is a corporation which happens to have a presence in the taxing jurisdiction. In this conclusion, I take issue with my colleagues who find some basis for the City’s nexus to impose the questioned tax on Bendix because the City, based on ASARCO’s presence, has an independent taxing nexus over ASARCO, the source of that income.
I
In determining whether a tax on a nondomiciliary corporation is violative of the Due Process Clause, the test is "whether the taxing power exerted by the state bears fiscal relation to protection, opportunities and benefits given by the state. The simple but controlling question is whether the state has given anything for which it can ask return” (Wisconsin v Penney Co., 311 US 435, 444 [emphasis added]). The due process requirements are a minimal nexus between the taxed interstate activities and the taxing State and a rational relationship between the income being taxed and the intrastate values of the enterprise (see, Mobil Oil Corp. v Commissioner of Taxes, 445 US 425, 436-437, supra). The "requisite 'nexus’ is supplied if the corporation [being taxed] avails itself of the 'substantial privilege of carrying on business’ within the *93 State” (id., at 437). The four-part test for Commerce Clause compliance is whether the activities being taxed have a substantial nexus with the taxing authority, and the tax is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the authority (see, majority opn, at 79; Complete Auto Tr. v Brady, 430 US 274).[1] If the business of ASARCO had been sufficiently related to the business of Bendix so that the two could be said to have constituted a unitary business, the City’s tax on the ASARCO dividends and capital gains would unquestionably have passed both the Due Process and Commerce Clause tests. For as the Supreme Court has emphasized, "the linchpin of apportionability in the field of state income taxation is the unitary-business principle” (Mobil Oil Corp. v Commissioner of Taxes, 445 US, at 439, supra). Where the income source and the recipient are unitary, the tax would bear "fiscal relation to protection, opportunities and benefits given [to the recipient] by the [taxing jurisdiction]” (Wisconsin v Penney Co., supra, at 444). Then — just as with the rest of the taxpayer’s business income — it would not be true that the taxing jurisdiction had "given [nothing to the recipient] for which it [could] ask return” (id., at 444).
That the unitary business principle is a limitation on the States’ power to tax investment income is clear from the Court’s language in Mobil that it did not mean to:
"suggest that all dividend income received by corporations operating in interstate commerce is necessarily taxable in each State where that corporation does business. Where the business activities of the dividend payor have nothing to do with the *94 activities of the recipient in the taxing State, due process considerations might well preclude apportionability, because there would be no underlying unitary business” (445 US, at 441-442, supra [emphasis added]).
The sole question in the present case is whether a tax may be constitutionally applied to investment income received by a nondomiciliary corporate taxpayer from its investment in a corporation engaged in a business wholly unrelated to the taxpayer’s intrastate activities. That the answer to the question is "no”, I believe, is now settled by the Supreme Court’s two recent decisions in ASARCO (supra) and Woolworth (supra). (See generally, Hellerstein, State Income Taxation of Multijurisdictional Corporations, Part II: Reflections on ASARCO and Woolworth, 81 Mich L Rev 157.)
In ASARCO and Woolworth the Supreme Court reemphasized the basic principle of Mobil (supra) and Exxon (supra) that "the linchpin of apportionability * * * is the unitary-business principle” (Mobil Oil Corp. v Commissioner of Taxes, 445 US, at 439, supra). More importantly, the Court expressly rejected the attempts of Idaho and New Mexico to expand the concept of unitary business to embrace corporations where, as here, the only claimed relatedness is in the financial contribution that one makes to the other. Idaho and New Mexico, following the arguments of the Multistate Tax Commission, had urged that there is no meaningful distinction between business and nonbusiness income and that, therefore, the unitary business principle should apply to investment income regardless of its nature.[2]
The Court, however, expressly rejected the position of the Multistate Tax Commission. In ASARCO, the Court stated:
"This definition of unitary business [proposed by *95 the Multistate Tax Commission] would destroy the concept. The business of a corporation requires that it earn money to continue operations and to provide a return on its invested capital. Consequently all of its operations, including any investment made, in some sense can be said to be 'for purposes related to or contributing to the [corporation’s] business.’ When pressed to its logical limit, this conception of the 'unitary business’ limitation becomes no limitation at all. When less ambitious interpretations are employed, the result is simply arbitrary.
"We cannot accept, consistently with recognized due process standards, a definition of runitary business’ that would permit nondomiciliary States to apportion and tax dividends JwJhere the business activities of the dividend payor have nothing to do with the activities of the recipient in the taxing State’ * * * In such a situation, it is not true that rthe state has given anything for which it can ask return’ ” (458 US, at 326-328, supra [emphasis added]).
Similarly, in Woolworth the Court held that the States’ reasoning:
"would trivialize this due process limitation by holding it satisfied if the income in question 'adds to the riches of the corporation’ * * * Income, from whatever source, always is a 'business advantage’ to a corporation. Our cases demand more. In particular, they specify that the proper inquiry looks 'to the underlying unity or diversity of business enterprise,’ * * * not to whether the nondomiciliary parent derives some economic benefit — as it virtually always will — from its ownership of stock in another corporation” (458 US, at 363-364, supra [emphasis added]).
Thus, ASARCO and Woolworth — when read in conjunction with the Supreme Court’s earlier unitary business decisions— leave no doubt that the unitary business principle is not only the means for taxing the income of a nondomiciliary from interstate activities but a limitation on the circumstances when such taxation is permitted. This reading of Woolworth and ASARCO is consistent with the rationale for taxing *96 nondomiciliary corporations on income from interstate activities as seen in earlier cases — that the tax is constitutionally justified if it is paid in exchange for some service or benefit to the taxpayer provided by the taxing jurisdiction (see, e.g., Northwestern Cement Co. v Minnesota, 358 US 450, 461-462 ["founders did not intend to immunize (interstate) commerce from carrying its fair share of the costs of the state government in return for the benefits it derives from within the State”]; id., at 469 [Harlan, J., concurring] [taxing statutes consistent with Interstate Commerce Clause as "a seeking of some compensation for facilities and benefits afforded by the taxing States to income-producing activities therein”]; Wisconsin v Penney Co., 311 US 435, 444, supra [State tax valid under Due Process Clause if it "bears fiscal relation to protection opportunities and benefits given by the state”]; Bass, Ratcliff & Gretton v Tax Commn., 266 US 271, 280-282; Underwood Typewriter Co. v Chamberlain, 254 US 113, 120-121; see also, Connecticut Gen. Co. v Johnson, 303 US 77 [California could not tax reinsurance premiums paid in Connecticut to a Connecticut reinsurance company conducting business in California where premiums were paid by insurance companies doing business in California covering California risks]).
In the decisions dealing with State taxation of nondomiciliaries — whether applying the unitary business principle (see, e.g., Mobil Oil Corp. v Commissioner of Taxes, supra) or not (see, e.g., Wisconsin v Penney Co. supra) — the focus for the taxing justification has been on the activities of the taxpayer in the taxing State and whether those activities are in some way protected, enhanced or assisted by the taxing State; in other words, whether there is a quid pro quo. The source of the taxed income is irrelevant and it makes no difference whether it comes from a corporation with or without a presence in the State. When the activities of the source of the investment income are sufficiently related to the interstate activities of the taxpayer to support the unitary business concept, the necessary quid pro quo and the resultant "minimal nexus” for the tax are present. When that relatedness is not present, there can be no quid pro quo and no nexus. Thus, ASARCO’s presence in New York City is of no moment. Imposing a tax on Bendix for the ASARCO investment income is contrary to the very essence of the rationale for taxing nondomiciliaries. Here, the activities of ASARCO giving rise to the income cannot be deemed to be those of Bendix and, *97 thus, Bendix cannot be said to have received benefits from the benefits and protections given by the City to ASARCO’s activities. In my view, taxing Bendix’s investment income directly contravenes the teachings of Mobil, Exxon, ASARCO and Woolworth.
The courts of other States support the propositions that the unitary business principle is the sine qua non of State taxation of nondomiciliaries and that the focus of its application is on the functional integration of the taxed corporation and the source of the investment income (see, e.g., Bendix Corp. v Director, Div. of Taxation, 125 NJ 20, 31, 592 A2d 536, 542, cert granted sub nom. Allied-Signal, Inc. v Director, Div. of Taxation, — US —, 112 S Ct 632 [unitary business principle "provides the foundation to satisfy due process and commerce clause restraints” on taxation of capital gains income where both the investing and invested corporations are present in the State]; Corning Glass Works v Virginia Dept. of Taxation, 241 Va 353, 402 SE2d 35, cert denied — US —, 112 S Ct 277 [nondomiciliary taxpayer’s capital gains income received from sale of stock in nonunitary corporation also present in taxing jurisdiction not taxable under Mobil, ASARCO, and Woolworth]; Illinois Tool Works v Pledger, Ark Ch Ct, Pulaski County, Mar. 1990, No. 88-2406 [unitary business principle must be applied in all cases involving income earned from intangible property including dividend and capital gains income]; James v International Tel. & Tel. Corp., 654 SW2d 865 [Mo 1983] [States may tax income earned outside their borders so long as the intrastate and extrastate activities form part of a single unitary business noting that the Supreme Court has rejected the claim that an investment relationship constitutes a unitary business]; see also, American Home Prods. Corp. v Limbach, 49 Ohio St 3d 158, 551 NE2d 201, cert denied — US —, 111 S Ct 63; Brunner Enters, v Department of Revenue, 452 So 2d 550 [Fla]).
II
The majority concedes that under a unitary business analysis, the activities of ASARCO in New York may not be attributed to Bendix for the purpose of obtaining the necessary nexus to tax the ASARCO dividends and capital gains. Indeed, it maintains, as does the City, that the unitary business principle is irrelevant here. Thus, the tax on Bendix cannot be justified on the ground that the City, in providing *98 protection or other benefits for ASARCO’s activities, has necessarily provided protection and benefits for the activities of Bendix (see, Wisconsin v Penney Co., 311 US 435, 444, supra). It is not disputed that ASARCO’s business was unconnected with the activities of Bendix, and that these activities were limited to Bendix’s business abroad and had nothing to do with its business of managing the company investments, conducted solely in the Michigan office.[3]
Rather than basing its justification for taxing the ASARCO income on any benefits or protection for the activities of Bendix, the majority predicates its taxing nexus solely on Bendix’s stock ownership in ASARCO, in the following passage:
"Here, it is undisputed that New York City has afforded privileges and opportunities to ASARCO. That these privileges and opportunities have contributed to ASARCO’s capital appreciation and thus also inured to the benefit of all its shareholders, including Bendix, is also beyond question. Thus, we agree with the City that it has given Bendix something 'for which it can ask return,’ and that consequently a sufficient nexus existed to support the City’s tax” (majority opn, at 82 [emphasis added]).
As authority for its holding that benefits given to the dividend payor (ASARCO) may be attributed to the stockholder-recipient for the purpose of finding nexus (even in the absence of a unity of activity), the majority relies on language taken from three Supreme Court decisions pertaining to the Wisconsin Privilege Dividend Tax[4] (Wisconsin v Penney Co., 311 US 435, supra; Harvester Co. v Department of Taxation, 322 US 435; Wisconsin Gas Co. v United States, 322 US 526).
But neither the language nor the principle of these cases supports the proposition for which the cases are cited: that when a taxing unit has taxing nexus over a corporation (as the City has over ASARCO), the taxing unit obtains an independent nexus for taxing the stockholders of that corpora *99 tion when they receive dividends or capital gains income. Indeed, the Supreme Court decisions on the Wisconsin Privilege Dividend Tax stand for just the opposite proposition.
The Wisconsin Privilege Dividend Tax was enacted in 1935 to resolve an inequity in the Wisconsin taxing system resulting from "a special Wisconsin feature [creating an] exemption of dividends from personal taxation” (see, Wisconsin v Penney Co., supra, at 442). The idea underlying the enactment of the Privilege Dividend Tax was to accomplish indirectly what the Wisconsin Legislature could not accomplish directly[5] — i.e., a scheme under which a tax would be levied on and paid by corporations but which would, in effect, be a tax borne by the shareholders (see, Wisconsin v Penney Co., 311 US, at 442, supra).
The statute provided that for "the privilege of declaring and receiving dividends, out of income derived from property located and business transacted in this state” (Wisconsin v Penney Co., 311 US, at 440, n 1, supra), there would be a 2 Vz% tax on dividends declared and paid by "all corporations (foreign and local)” (id.) to be "deducted and withheld from such dividends payable to residents and non-residents by the payor corporation” (id.). Each dividend paying corporation was made liable for the tax and was required to deduct the tax from the dividends the corporation declared (id.).
After the Privilege Dividend Tax was enacted, it was immediately attacked as unconstitutional in cases brought by non-domiciliary corporations which transacted portions of their multistate businesses in Wisconsin. In Wisconsin v Penney Co. (311 US 435, supra), the tax was upheld against the argument that it was an unconstitutional tax by Wisconsin on transactions beyond its borders — i.e., a tax on the privilege of declaring dividends, an action which took place at the corporate *100 headquarters in New York. In rejecting this argument, Justice Frankfurter, for the majority, looked beyond the label of the tax and the fact that the "taxable event” (the declaration of dividends) happened outside the State, to the actual substance of the tax and that it gave the State a taxing nexus over the corporation in Wisconsin. The Court concluded that "[t]he practical operation of this legislation is to impose an additional tax on corporate earnings within Wisconsin but to postpone the liability for this tax until such earnings are paid out in dividends” (id., at 442) and that "the incidence of the tax as well as its measure is tied to the earnings which the State of Wisconsin has made possible” (id., at 446). The Court sustained the tax. It found the necessary basis for the tax in the State’s nexus over the corporation, stating:
"The simple but controlling question is whether the state has given anything [to the corporation] for which it can ask return. The substantial privilege of carrying on business in Wisconsin, which has here been given, clearly supports the tax, and the state has not given the less merely because it has conditioned the demand of the exaction upon happenings outside its own borders. The fact that a tax is contingent upon events brought to pass without a state does not destroy the nexus between such a tax and transactions [of the corporation] within a state for which the tax is an exaction” (id., at 444-445 [emphasis added]).
It should be noted that nothing in Penney suggests that Wisconsin had a taxing nexus over any party other than the dividend payor corporation, let alone, over the shareholders of J.C. Penney. Indeed, such an interpretation is belied by the Penney majority’s rejection of dissenting Justice Roberts’ arguments that the Wisconsin tax was an unconstitutional tax on the shareholders (id., at 448 [Roberts, J., dissenting]) and not a tax levied on the corporation in Wisconsin, as the majority concluded.[6]
Three and one-half years after Penney, the Supreme Court again sustained the Privilege Dividend Tax, in Harvester Co. v *101 Department of Taxation (322 US 435, supra). In the interim between Penney and Harvester, the Wisconsin Supreme Court had declared that " 'the burden of the tax is specifically laid upon the stockholder’ ” (id., at 439 [emphasis added]) and that " 'the corporation declaring the dividend must deduct the tax from the dividend and may not under any circumstances treat the tax as a necessary expense of doing business [for state income tax purposes]’ ” (id., at 439 [emphasis added]). Armed with these new holdings of the Wisconsin Supreme Court, the International Harvester Corp. joined the attack on the statute as violating the Due Process Clause by imposing a tax "on stockholders and on activities and objects outside the territory of the State of Wisconsin, and consequently outside its legislative jurisdiction” (id., at 439 [emphasis added]).
For the purposes of addressing these renewed arguments, in the light of the latest Wisconsin court holdings, the Supreme Court "assume[d] that the statute, by directing deduction of the tax from declared dividends * * * is thus, in point of substance, laid upon and paid by the stockholders” (id., at 440 [emphasis added]). Notwithstanding this assumption, the Supreme Court again upheld the Privilege Dividend Tax reaffirming its holding in Penney "that the practical operation of the tax is to impose an additional tax on corporate earnings within Wisconsin, but to postpone the liability for payment of the tax until such earnings are paid out in dividends” (Harvester Co. v Department of Taxation, supra, at 438 [citing Wisconsin v Penney Co., supra, at 442]). The Court concluded that:
"For the reasons stated in the Penney case we do not doubt that a state has constitutional power to make a levy upon a corporation, measured by so much of its earnings from within the state as it distributes in dividends, and to make the taxable event the corporation’s relinquishment of the earnings to its stockholders. That power is not diminished or altered by the fact that the state courts, for purposes of their own, denominate the levy a tax on the privilege of declaring and receiving dividends, or that they decline to call it an income tax” (322 US, at 441 [emphasis added]).
And further that:
"The power to tax the corporation’s earnings includes the power to postpone the tax until the *102 distribution of those earnings, and to measure it by the amounts distributed. Compare Curry v. McCanless, 307 U.S. 357, 370. In taxing such distributions, Wisconsin may impose the burden of the tax either upon the corporation or upon the stockholders who derive the ultimate benefit from the corporation’s Wisconsin activities” (Harvester Co. v Department of Taxation, supra, at 441 [emphasis added]).
That the burden of any tax which is taken out of the stockholder’s dividends inevitably falls on the stockholders is obvious, as is the proposition that what benefits the corporation must benefit its stockholders. That the Court in Harvester alludes to these self-evident points in no way suggests that the burdens on the shareholders or the benefits they incidentally derive from benefits to the corporation (see, majority opn, at 82) could be a basis for Wisconsin’s having a discrete taxing nexus over them, independent of its taxing nexus over the corporation. Indeed, the Court’s holding in Harvester (dismissing the challenge to the statute as imposing an unconstitutional direct tax on the shareholders) echoed its earlier holding in Penney (rejecting Justice Roberts’ dissent) that the burden which the statute places on the shareholders does not amount to a separate, direct tax on them and that, if it were so viewed, it would be unconstitutional for lack of nexus.
Finally, Wisconsin Gas Co. v United States (322 US 526, supra) (see, majority opn, at 83, n 16) certainly does not hold that the Wisconsin Privilege Dividend Tax creates an independent taxing nexus over the shareholders that would support a direct tax on them. The limited holding of that case is that for the purposes of determining whether the corporation, rather than its shareholders, had a right to deduct the tax under section 23 (c) of the Revenue Act of 1934 (48 US Stat 680, 688), the tax, as described in the Wisconsin statute and treated by the Wisconsin Supreme Court, was "imposed” on the shareholders, not the corporation. The practical effect was only to preclude corporations from taking a section 23 (c) deduction for payment of the tax.
In sum, the taxpayers in Penney and Harvester were the corporations which paid out the dividends. The decisions hold no more than that Wisconsin had a taxable nexus over these corporations and that, therefore, the tax was valid even though the stockholders obviously bore the brunt of the deduc *103 tions from their dividends. Here, the City and the majority seek to use Penney and Harvester as authority for the logically converse proposition: that the City has an independent nexus to tax — not the dividend payor, but the stockholder-dividend recipients solely because as stockholders they share in any benefit to the corporation. The cases do not support that proposition.
Ill
The majority’s holding comes to this: a nondomiciliary corporation doing business in a taxing jurisdiction may be constitutionally taxed for income received from its investment in a corporation engaged in activities totally unrelated to those of the taxpayer so long as the corporation (i.e., the source of the income) is in the same taxing jurisdiction. The reasoning is that the benefits and protections that the investment has received from the taxing jurisdiction are necessarily passed on to and enjoyed by the owner in the income or profits it receives from the investment.
Whatever gloss may be put upon it, the proposition, in essence, is but an application of the unitary business principle to investment income from a source engaged in activities unrelated to the taxpayer, upon the theory that returns on invested capital are a conduit by which the benefits provided to the investment-corporation are transposed to the investor-corporation for the purposes of establishing nexus. But, it is precisely this argument — that a beneficial financial interrelationship between corporations results in a taxing nexus — that was rejected by the Supreme Court in ASARCO (supra, at 326-329) and Woolworth (supra, at 363-364) (see, discussion, supra, at 94-95 and n 2, at 94).
The inevitable consequence of the majority’s decision is the unfair double taxation emphasized in Judge Bellacosa’s dissent (Bellacosa, J., dissenting opn, at 91). Moreover, the practical effect of the holding could be to expose nondomiciliary investor-corporations to State taxation of investment income in every jurisdiction in which the investment-corporation is also present. Thus, Bendix (or one of its many unitary enterprises) could be taxed on the ASARCO dividends and capital gains in every taxing jurisdiction in which Bendix (or one of its unitary enterprises) and ASARCO (or one of its unitary enterprises) are both present regardless of the nature of the entities’ activities in that jurisdiction. Under the rule adopted by *104 the City and the majority, the following would be possible: because Bendix "is present” in all 50 States (see, Bendix Corp. v Director, Div. of Taxation, 125 NJ 20, 24, supra), each corporation owning shares in Bendix could be taxed on the dividends and capital gains in every State in which that investing corporation is also present. Such a rule, I believe, defies the Supreme Court’s holding in Mobil (supra) that it did "not mean to suggest that all dividend income received by corporations operating in interstate commerce is necessarily taxable in each State where that corporation does business” (Mobil Oil Corp. v Commissioner of Taxes, supra, at 441-442). One may easily imagine the resultant possibilities of overlapping taxes, complexities in record keeping and reporting, and of unfairness, particularly in situations when the taxed corporation is domiciled in a UDITPA[7] State where it must report and pay a State tax on all of its investment income.
Would the majority’s transfer-of-benefit rationale — applied here to impute benefits given a corporation to its shareholders —apply to other forms of investment, as well, e.g., preferred shares, bonds, debentures or other evidences of corporate debt? (See, ASARCO Inc. v Idaho State Tax Commn., supra, at 329-330, 330, n 25, and 334 [O’Connor, J., dissenting].) Since there is arguably some benefit to a creditor from whatever may benefit its debtor financially, particularly if the debt is unsecured, it would seem that the majority’s rationale should apply for the purpose of obtaining taxing nexus over corporate creditors. It would be anomalous, to say the least, that a corporate owner of a bond should be susceptible to taxation on the bond interest in any jurisdiction where both the bond owner and bond issuer are present; regardless of their activities in that jurisdiction. Yet, this seems to be the logical extension of the majority’s rule.
The highest courts of Virginia in Corning Glass (supra), and of New Jersey in Bendix Corp. v Director, Div. of Taxation (supra) have decided analogous State tax cases solely on the applicability or nonapplicability of the unitary business principle. They have apparently viewed the presence or absence of the investment source within the taxing jurisdiction as irrelevant to the required separate nexus over the taxed corporation. I agree with this conclusion and believe it is compelled *105 by Supreme Court precedent and the basic constitutional rationale for a State’s taxation of a nondomiciliary corporation. I would reverse.
Judges Simons, Kaye and Alexander concur with Judge Titone; Judge Bellacosa dissents and votes to reverse in a separate opinion in which Chief Judge Wachtler concurs; Judge Hancock, Jr., dissents and votes to reverse separately in another opinion.
Order affirmed, with costs.

. The nexus requirements under the Due Process and Commerce Clauses are essentially the same. The key is the connection between the taxed activities (here, Bendix’s business activities) and the taxing State. As one commentator puts it:
"And, as a rough but constitutionally adequate measure of benefits conferred, one must look to the ways in which the taxed activities can be 'connected’ with the taxing state. The degree of 'connection,’ 'contact,’ or 'nexus’ between the taxing state and the interstate commerce taxed is also the fundamental measure of whether or not a state tax violates the commerce and due process clauses. Therefore, to the extent that a state can point to a substantial connection with a particular aspect of interstate commerce, it can also demonstrate that its program is consistent with the commerce and due process clauses” (Tribe, American Constitutional Law §6-16, at 446 [2d ed] [emphasis added]).

. In ASARCO, Idaho had argued that:
" 'When income is earned from activities which are part of a unitary business [ASARCO in and of itself] conducted in several states, then the requirement that the income bear relation to the benefits and privileges conferred by the several states has been met’ ” (458 US, at 325); and that
" 'When intangible assets such as, for example, shares of stock, are found to be a part of a taxpayer’s own unitary business, . . . there is no logical or constitutional reason why the income from those same intangibles should be treated any difierently than any other business income that that taxpayer might earn’ ” (id., at 325).

. ASARCO, of course, must pay its own corporate tax — just as Bendix does — for the privilege of doing business in New York City measured by the amount of business it does in the City (see, Bellacosa, J., dissenting opn, at 88).

. Wisconsin Laws of 1935 (ch 505, § 3) as amended by Laws of 1935 (ch 552).

. As the Penney court explained:
"This exemption persisted while regular and surtax rates against personal incomes were raised. Attempts at relief from the unfairness charged against this exemption of dividends, particularly advantageous to the higher brackets, were steadily pressed before the Wisconsin Legislature. To relieve local earnings of foreign corporations from a dividend tax would have had a depressive effect on wholly local enterprises. The Privilege Dividend Tax was devised to reduce at least in part the state’s revenue losses due to dividend exemptions, and also to equalize the burdens on all Wisconsin earnings, regardless of the formal home of the corporation” (311 US, at 442).

. It should be noted that the majority and the dissent were in complete agreement that a tax imposed directly on, and requiring an independent nexus over, the out-of-State shareholders would be unconstitutional. The disagreement was over the effect of the tax: i.e., whether, as the dissent argued, it was such a direct and independent levy on the shareholders.

. See, Uniform Division of Income for Tax Purposes Act, 7A ULA 336. Under UDITPA §4, all nonbusiness corporate income is allocated to the State of domicile for taxation.